UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JB NICHOLAS,                                  )
                                             )
            Plaintiffs,                       )
                                             )
      v.                                      )          1:23-cv-00015-JAW
                                             )
JUDY A. CAMUSO, Commissioner, Maine           )
Department of Inland Fisheries & Wildlife,    )
                                             )
            Defendant.                        )

**ORDER ON MOTION TO DISMISS**

A plaintiff denied a license to work as a wilderness fly fishing guide in Maine because of a past felony conviction sues to enjoin the state from enforcing its statute that requires guides to be licensed and/or to have the licensing regulations declared unconstitutional.  The state moves to dismiss his complaint, arguing—among other things—that the court should abstain from hearing the case because the administrative process guarantees the plaintiff review in the state system and his parallel suit in this court is an improper attempt to circumvent that process.  To the extent that the plaintiff pleads as-applied challenges to the denial of his application, the Court concludes that a *Burford* abstention is appropriate and dismisses the suit without prejudice to allow the state process to run its course, and to the extent that the plaintiff brings facial constitutional challenges to the licensing regime, the Court dismisses them on the merits.

## I.   BACKGROUND

On January 9, 2023, JB Nicholas, proceeding pro se, filed a complaint against Judy Camuso, Commissioner of the Maine Department of Inland Fisheries & Wildlife (the Commissioner), alleging that the state's guide licensing regime violated his rights guaranteed by the First and Fourteenth Amendments and the Constitution's Privileges and Immunities Clause.  *Compl.* (ECF No. 1).  That same day, he filed a motion for a preliminary injunction to enjoin the Commissioner from enforcing the statute against him.  *Mot. for Prelim. Inj.* (ECF No. 4).  On April 10, 2023, the Commissioner filed a motion to dismiss the complaint, *[Def.'s] Mot. to Dismiss* (ECF No. 10) (*Def.'s Mot.*), and on April 11, 2023, she filed a response to the motion for a preliminary injunction.  *Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj.* (ECF No. 11).  On April 13, 2023, Mr. Nicholas filed a response to the motion to dismiss.  *Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss & in Further Supp. of Pl.'s Mot. for a Prelim. Inj.* (ECF No. 12) (*Pl.'s Opp'n*).  Finally, on April 27, 2023, the Commissioner filed a reply in support of her motion to dismiss.  *Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss* (ECF No. 16) (*Def.'s Reply*).

## II.   FACTS[1]

### A.   Maine's Guide Licensing Regulations

Maine law defines a "guide" as "a person who receives any form of remuneration for that person's services in accompanying or assisting a person in the

---

[1]      Consistent with Federal Rule of Civil Procedure 12(b)(6), in describing the facts, the Court has relied upon the allegations in the Plaintiff's Complaint.  *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 68 (1st Cir. 2014); *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) ("We examine whether the operative complaint states a claim for which relief can be granted when we

fields or forests or on the waters or ice within the jurisdiction of the State while hunting, fishing, trapping, boating, snowmobiling, using an all-terrain vehicle or camping at a primitive camping area."  12 M.R.S. § 10001(28).  Except in certain circumstances not relevant here "a person may not act as a guide without a valid license" and acting as an unlicensed guide is a Class D crime punishable by a fine and imprisonment.  12 M.R.S. § 12853(1-2).

Applicants must pass a guide examination, be certified in first aid, and submit to a background check that requires the applicant to have fingerprints taken.  12 M.R.S. § 12853(4).  The statute provides that "[t]he commissioner may revoke, suspend, refuse to issue or refuse to renew a guide license" if "the guide or an applicant for a guide license has been convicted of committing a crime in the State or any other jurisdiction that is punishable by imprisonment for a term of one year."  12 M.R.S. § 10908(1).  An applicant denied a license because of a past conviction has the right to request "a hearing before the commissioner" and "[f]ollowing the hearing, the commissioner may issue a guide license or reinstate a guide license that has been revoked, suspended or denied if the commissioner determines that the applicant has been sufficiently rehabilitated from the conviction to warrant the public trust or the nature of the conviction or the circumstances surrounding it do not warrant disqualification from licensure."  *Id.*  Applicants are then entitled to institute "judicial review of final agency action" "by filing a petition for review in the Superior Court" within 30 days after receiving an adverse decision.  5 M.R.S. § 11002.

---

construe the well-pleaded facts in the light most favorable to the plaintiffs, accepting their truth and drawing all reasonable inferences in plaintiffs' favor." (internal citation omitted)).

### B.    JB Nicholas' Application for a Guide License

Mr. Nicholas is an "expert fly fisher and experienced wilderness traveler" who seeks to specialize in fly fishing as a Maine guide, escorting clients on multi-day wilderness trips to teach them "about fly fishing, camping, hiking, paddling, navigation, gourmet field cookery, safety and generally living as fully and free from fear as possible." *Compl.* ¶¶ 13-14.

In 1991, Mr. Nicholas was convicted of second-degree manslaughter in New York and sentenced to a maximum of 19 years imprisonment. *Id.* ¶ 2. While incarcerated, he became a "jailhouse lawyer" serving other prisoners; Mr. Nicholas was paroled for good behavior in 2003, and graduated from New York University in 2006. *Id.* He became a journalist and won multiple awards for his reporting. *Id.* ¶¶ 3-4.

Mr. Nicholas applied for a guide license and the Commissioner denied his application on January 13, 2023. *Def.'s Mot.*, Attach. 1, *Aff. of Christopher Cloutier* at 3 (*Cloutier Aff.*). The denial referenced Mr. Nicholas' past felony conviction and informed him that he "ha[d] the opportunity to request" a hearing and "[t]hat hearing, if requested, will be held pursuant to Title 12 M.R.S.A., Section 10908." *Id.* Mr. Nicholas requested a hearing, which was held on February 17, 2023. *Id.* at 4. At the hearing, he was "given an opportunity to present evidence" that he had been rehabilitated, including inviting witnesses to "testif[y] on [his] behalf, both in writing and during the hearing." *Id.* at 5-6.

After the hearing, the Commissioner affirmed the denial of Mr. Nicholas' application. *Id.* at 4-7 (*Commissioner's Decision*). Her decision stated that "[i]f

granted a guide license Nicholas would be entrusted with the safety and welfare of the adults and children under his charge, individuals who may have little or no experience engaging in such activities in the woods or on the waters of the State of Maine." *Id.* at 6-7. She concluded that "the circumstances of the crime and Nicholas' actions following it show a serious lack of judgment" and "based on the record evidence, I do not find that Nicholas has been sufficiently rehabilitated to warrant the public trust for the issuance of a Maine guide license." *Id.* at 7. Finally, the Commissioner informed Mr. Nicholas that he was entitled to appeal her decision by filing an appeal in the Superior Court within 30 days. *Id.*

## III.   THE PARTIES' POSITIONS

### A.      The Commissioner's Motion to Dismiss

The Commissioner interprets Mr. Nicholas' suit primarily as an as-applied challenge and asserts that he has failed to allege standing or ripeness. *Def.'s Mot.* at 1-2. She adds that Mr. Nicholas is entitled to seek review by the state Superior Court and the ongoing state process requires the Court to dismiss the complaint based on sovereign immunity while also warranting abstention. *Id.* at 2. Moreover, the Commissioner contends that Mr. Nicholas' Privileges and Immunities Clause claim fails to state a claim upon which relief can be granted. *Id.*

Regarding abstention, the Commissioner submits that "this Court should, pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), abstain from deciding Plaintiff's constitutional challenges pending completion of state court proceedings." *Id.* at 3. She reasons that Burford abstention is appropriate because "timely and adequate state-court review is available," and the Court's consideration of the merits

of the complaint would "usurp the role of state administrative agencies in deciding issues of state law and policy that are committed in the first instance to expert administrative resolution." *Id.* at 10 (quoting *Chico Serv. Station v. Sol Puerto Rico Ltd.*, 633 F.3d 20, 32 (1st Cir. 2011)) (internal quotation marks omitted).

The Commissioner also asserts that, to the extent the Court interprets Mr. Nicholas' Complaint as bringing a facial challenge to the constitutionality of Maine's licensing process for guides, this challenge fails to meet the narrow "facial challenge" exception to the standing requirement. *Id.* at 5 n.1 (citing *Whiting v. Town of Westerly*, 942 F.2d 18, 21 (1st Cir. 1991)). She submits that, furthermore, Mr. Nicholas' argument fails as a matter of law because Maine law does not presumptively bar felons from being licensed as guides and the review is discretionary. *Id.*

## B.     JB Nicholas' Opposition to the Motion to Dismiss

Mr. Nicholas counters that he has standing because he has applied for and been denied a license. *Pl.'s Opp'n* at 4. His response characterizes his suit as bringing both facial and as-applied challenges. *Id.* at 3 ("Plaintiff's facial challenge . . . was ripe" and he "has fully exhausted all administrative remedies making his as-applied challenge ripe"). He submits that the review process provided by Maine law "<u>does not</u> protect Plaintiff's federal constitutional rights." *Id.* at 8 (emphasis in *Pl.'s Opp'n*.).

Mr. Nicholas submits further that his facial challenge was ripe upon enactment of the amendment and his as-applied challenge became ripe on April 10, 2023, when the Commissioner affirmed the denial of his application. *Id.* at 9-10. Regarding the Commissioner's *Burford* argument, he counters that "[t]here are no

'ongoing state proceedings'" and that "Plaintiff chose, four months ago, to litigate the constitutionality of Defendant's action in this federal court-as is his right under the Constitution and under federal law duly enacted by Congress." *Id.* at 11-12. He asserts that *Burford* is disfavored and this case does not involve the type of specialized state law questions warranting abstention. *Id.* at 13-15.

Finally, Mr. Nicholas contends that his right to be a guide is protected First Amendment activity and the state's restrictions are subject to strict scrutiny. *Id.* at 16-18.

### C. The Commissioner's Reply in Support of Her Motion to Dismiss

In reply, the Commissioner submits that, if Mr. Nicholas does not appeal her decision within the 30 days provided by statute, further review "will be barred by *res judicata.*" *Def.'s Reply* at 2. She reiterates that Mr. Nicholas "fail[s] to assert any deficiency in Maine's guide licensure statutes or regulations which could support a First Amendment challenge, let alone a facial challenge." *Id.* at 4-5.

## IV. LEGAL STANDARD

Rule 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). This is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

This is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V.   DISCUSSION

Ambiguity in Mr. Nicholas' pleadings, viewed in combined with the administrative proceedings occurring in parallel to his federal action, creates uncertainty as to whether Mr. Nicholas is pleading his claims as facial challenges,

as-applied challenges, or both.  Mr. Nicholas filed his Complaint even before the first denial of his application for a license as a Maine guide and, accordingly, he phrased the Complaint as a facial challenge.  However, as noted above, in his opposition to the state's motion to dismiss, Mr. Nicholas also characterizes his Complaint as an as-applied challenge.  Accordingly, the Court analyzes the sufficiency of the Complaint under both rubrics.

### A.     JB Nicholas' Facial Challenge to Maine's Licensing Regulations

#### 1.     First Amendment Challenge

To succeed in a typical facial attack, a challenger must establish "that no set of circumstances exists under which [the challenged regulations] would be valid or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010).  In the First Amendment context, the Supreme Court recognizes "a second type of facial challenge," under which a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n. 6 (2008).

Mr. Nicholas submits that he "does have a First Amendment right to be a guide, under undisputed precedent from the DC and Fourth Circuit Courts of Appeals . . . [and t]he appropriate standard of review is strict scrutiny." *Pl.'s Opp'n* at 19 (citing *Billups v. City of Charleston*, 961 F.3d at 682-84 (4th Cir. 2020) and *Edwards v. District of Columbia*, 755 F.3d at 1001-09 (D.C. Cir. 2014)).  Mr. Nicholas is correct that those cases held that licensing schemes for city tour guides may infringe on First Amendment rights; however, the *Billups* and *Edwards* courts applied intermediate,

not strict, scrutiny.   961 F.3d at 685 ("In applying intermediate scrutiny to the Ordinance, we follow the roadmap provided by the Supreme Court . . ."); 755 F.3d at 1000 ("assuming the regulations are content-neutral, we hold they fail even under the more lenient standard of intermediate scrutiny").

Intermediate scrutiny applies to regulations on expression that are content-neutral.  As the First Circuit described in *Rideout v. Gardner*, 838 F.3d 65 (1st Cir. 2016):

> These laws do not apply to speech based on or because of the content of what has been said, but instead "serve[] purposes unrelated to the content of expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 791(1989). "The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the context of expression is deemed neutral...." *Id.* (citation omitted).   Content-neutral restrictions are subject to intermediate scrutiny, which demands that the law be "narrowly tailored to serve a significant governmental interest." *Id.* "[U]nlike a content-based restriction of speech, [a content-neutral regulation] 'need not be the least restrictive or least intrusive means of' serving the government's interests." *McCullen v. Coakley*, [573 U.S. 464, 486] (2014) (quoting *Ward*, 491 U.S. at 798).

*Id.* at 71-72.  Here, the challenged licensing regulations are plainly content-neutral, as they do not disfavor any particular message and serve purposes unrelated to the content of expression.  To survive intermediate scrutiny, they must be "narrowly tailored to serve a significant governmental interest" but "need not be the least restrictive or least intrusive means of' serving the government's interests." *Id.* at 72 (citations and internal quotations omitted).

The Court does not view *Edwards* or *Billups* as apposite to this analysis. *Edwards* involved regulations for "sightseeing guide[s]" giving historic tours of Washington, D.C., and that panel's analysis focused primarily on the requirement that prospective guides pass a 100-question multiple choice exam as unduly burdensome on speech. 755 F.3d at 998, 1009 ("The District failed to present any evidence the problems it sought to thwart actually exist . . . [and] there is no evidence the exam requirement is an appropriately tailored antidote"). Similarly, in *Billups* the controversy centered on whether requiring that "a prospective guide must pass a 200-question written examination that focuses on Charleston's history, architecture, and historic preservation efforts" was narrowly tailored to serve the city's "significant interest in protecting its tourism industry." 961 F.3d at 676.

Mr. Nicholas, however, has not challenged the validity of Maine's exam requirement; instead, he focuses on the background check and potential for applicants to be denied a license because of a past felony conviction. Unlike in *Edwards* and *Billups*, the primary government interest asserted is not protecting the state's tourism industry from unknowledgeable guides, but in protecting public safety. *See Commissioner's Decision* at 6 ("[i]f granted a guide license Nicholas would be entrusted with the safety and welfare of the adults and children under his charge, individuals who may have little or no experience engaging in such activities in the woods or on the waters of the State of Maine"); *Cutting v. City of Portland, Maine*, 802 F.3d 79, 86 (1st Cir. 2015) (recognizing that the government's "interest in protecting public safety" is "a legitimate and significant one").

The state government's interest in public safety is weightier than its interest in protecting the tourism industry and, moreover, public safety concerns are more salient when licensing guides to lead overnight trips into the wilderness than "sightseeing guides" to give historical tours of major cities. In *Kagan v. City of New Orleans, Louisiana*, 753 F.3d 560 (5th Cir. 2014), the Fifth Circuit, applying intermediate scrutiny, upheld a licensing regime for city tour guides providing that guides "must not have been convicted of a felony within the prior five years." *Id.* at 561. The *Kagan* Court reasoned that "New Orleans, by requiring the licensees to know the city and not be felons or drug addicts, has effectively promoted the government interests, and without those protections for the city and its visitors, the government interest would be unserved." *Id.* at 562.

Maine has a significant interest in public safety and the question becomes whether its licensing regulations are narrowly tailored to serve that interest. Mr. Nicholas contends that the licensing regime is facially unconstitutional because it:

    (1) Requires giving fingerprints to police;
    (2) Presumptively disqualifies applicants . . . who have previously been convicted of a felony, no matter how long ago;
    (3) Gives unbridled discretion to the officials responsible for issuing guide licenses;
    (4) Fails to impose any time limits on the agency to issue or deny guide license applications; and
    (5) Lacks a meaningful and fair administrative hearing or appeal process with the substantive and procedural rights and rules required by clearly established Supreme Court precedent.

*Compl.* ¶ 1. The Court disagrees, concluding that the statute's provisions are sufficiently narrowly tailored to survive Mr. Nicholas' facial challenge.

The licensing of guides "entrusted with the safety and welfare of the adults and children under [their] charge, individuals who may have little or no experience engaging in such activities in the woods or on the waters of the State of Maine," *Commissioner's Decision* at 6, reasonably implicates the state's significant interest in public safety—and more so than the licensing of city sightseeing guides. The requirement of a background check is an important and relatively nonintrusive means to serve that end—to determine, for example, whether the leader of a children's overnight fishing trip has been previously convicted of child sex abuse.

Notably, the statute, on its face, does not presumptively or categorically bar convicted felons from receiving a license.[2]  Instead, it provides that "[t]he commissioner *may* revoke, suspend, refuse to issue or refuse to renew a guide license" to such persons, 12 M.R.S. § 10908(1) (emphasis supplied), who then has the right to request "a hearing before the commissioner" and "[f]ollowing the hearing, the commissioner may issue a guide license or reinstate a guide license that has been

---

[2]     As an applicant for a license, Mr. Nicholas had the obligation to demonstrate that he met state qualifications for the license.

Although Mr. Nicholas says that the statute creates a presumption against felons, the Court does not view this statutory scheme as creating a presumption.  It only requires the applicants to demonstrate that they meet state qualifications for a license.  If the applicant is a felon, the statute requires the applicant to show one of three matters: (1) sufficient rehabilitation, (2) the nature of the conviction should not bar the license, or (3) the circumstances surrounding the conviction should not bar the license.  Placing a burden on applicants to demonstrate that they meet the requirements of the statute for a license is different, in the Court's view, from a presumption that whatever the conviction, they are presumed not to qualify.

Even if the statute could be interpreted as creating a presumption, this would not present an issue of constitutional dimension.  The Supreme Court has written that "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." *Lavine v. Milne*, 424 U.S. 577, 585 (1976); *United States v. $ 250,000 in United States Currency*, 808 F.2d 895, 900 (1st Cir. 1987) ("Generally, Congress may alter the traditional allocation of the burden of proof without infringing upon the litigant's due process rights unless the statute is criminal in nature"); *Mallinckrodt LLC v. Littell*, 616 F. Supp. 2d 128, 148 (D. Me. 2009).

revoked, suspended or denied if the commissioner determines that the applicant has been sufficiently rehabilitated from the conviction to warrant the public trust or the nature of the conviction or the circumstances surrounding it do not warrant disqualification from licensure." *Id.* The applicant is then entitled to judicial review of this decision in the state court system.[3] 5 M.R.S. §§ 11001-11002. The combination of permissiveness, individualized determination, and opportunity for review built into this licensing regime allow it to survive facial challenge—on its face, the statute does not bar convicted felons from receiving a license, nor does it deny them judicial review.

Mr. Nicholas' challenge fails to clear the lowered bar for facial challenges in the First Amendment context, where a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange*, 552 U.S. at 449 n. 6. This statute, on its face, does not categorically prohibit any applicants from licensure; instead, it provides only that the Commissioner may, at her discretion, refuse to issue licenses to persons with felony convictions; the statute further provides that an applicant has a right to a hearing before the Commissioner and the applicant also may challenge the Commissioner's determination in state court system. Mr. Nicholas has fallen far short of demonstrating that "a substantial number of [the statute's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep."

---

[3]     The state concedes that the Commissioner's decision is a "final agency action" under 5 M.R.S. § 11001(1). *Def.'s Mot.* at 9; *Commissioner's Decision* at 3 (notifying Mr. Nicholas of his right to appeal her decision to the Superior Court).

*Id.* Maine's guide licensing regime is narrowly tailored to serve a significant governmental interest and thereby survives Mr. Nicholas' facial challenge on First Amendment grounds.

### 2. Fourteenth Amendment Challenge

Mr. Nicholas also challenges the licensing regime on Fourteenth Amendment due process and Privileges and Immunities grounds because it:

(1) Requires giving fingerprints to police;
(2) Presumptively disqualifies applicants . . . who have previously been convicted of a felony, no matter how long ago;
(3) Gives unbridled discretion to the officials responsible for issuing guide licenses;
(4) Fails to impose any time limits on the agency to issue or deny guide license applications; and
(5) Lacks a meaningful and fair administrative hearing or appeal process with the substantive and procedural rights and rules required by clearly established Supreme Court precedent.

*Compl.* ¶¶ 28-29. Because these are not First Amendment challenges, Mr. Nicholas must establish "that no set of circumstances exists under which [the challenged regulations] would be valid or that the statute lacks any plainly legitimate sweep." *Stevens*, 559 U.S. at 472. He has not met this burden for either challenge.

Mr. Nicholas' Complaint does not flesh out the theories or authority underlying his Fourteenth Amendment due process challenge, but the gravamen of his claim appears to be that the judicial review guaranteed by the statute is insufficient because "[i]t does not protect Plaintiff's federal constitutional rights. It does not allow Plaintiff to fully and fairly litigate the constitutional claims made in this case-and secure, if he is successful, the systemic relief this Court-and only this Court-is

empowered to effect." *Pl.'s Opp'n* at 8.  However, as Judge Brock Hornby of this court

held in *Christian Action Network v. Maine*, 679 F. Supp. 2d 140 (D. Me. 2010):

> The Maine Administrative Procedure Act allows presentation of
> "arguments on all issues" in adjudicatory hearings, 5 M.R.S.A. § 9056(2),
> and all final agency actions are subject to judicial review in the Superior
> Court or the Supreme Judicial Court sitting as the Law Court, 5
> M.R.S.A. §§ 11001-11008 (2009).  There is no indication in the statute
> that Maine's administrative procedures preclude consideration of
> constitutional issues; and even if officials here refused to rule on the
> constitutionality of the statute that they are charged to administer,
> judicial review of administrative proceedings--which does permit
> constitutional review . . . provide[s] an opportunity to make
> constitutional arguments.  *See Middlesex [Cnty. Ethics Comm. v.
> Garden State Bar Ass'n]*, 457 U.S. [423, 436 (1982)]; *see also Globe Air,
> Inc. v. Thurston*, 438 A.2d 884, 886 (Me. 1981) (noting that judicial
> review includes reversal or modification of agency action if "[i]n violation
> of constitutional or statutory provisions" (quoting 5 M.R.S.A. §
> 11007(4)(C)(1)).

*Id.* at 145-46*; see also Michalowski v. Head*, No. CV-10-278-B-W, 2010 U.S. Dist.

LEXIS 68979, at *15 (D. Me. July 12, 2010) ("The Maine Administrative Procedures

Act allows for judicial review of the Board's decision" and thus the plaintiff "has an

adequate opportunity to raise federal constitutional challenges in state court judicial

review").

Although Mr. Nicholas protests that state court review "does not protect

Plaintiff's federal constitutional rights," *Pl.'s Opp'n* at 8, "a federal court must

presume that state courts, consistent with the imperatives of the Supremacy Clause,

*see* U.S. Const. art. VI, are fully competent to adjudicate federal constitutional. . .

claims properly presented by the parties." *Casa Marie, Inc. v. Superior Court of P.R.*,

988 F.2d 252, 262 (1st Cir. 1993) (citing *Middlesex*, 457 U.S. at 431).

16

Mr. Nicholas has not met his burden to mount a facial challenge on due process grounds.

### 3.    Privileges and Immunities Challenge

Finally, Mr. Nicholas alleges that the licensing regime violates "Plaintiff's rights under the Constitution's Privileges and Immunities Clause, U.S. Const., Art. IV, § 2." *Compl.* ¶ 28.  The Commissioner submits that this count fails to state a cognizable claim because the cited clause "appl[ies] to circumstances in which a citizen of one state alleges that another state has not treated them equally to its own citizens" and Mr. Nicholas "fails to allege any unequal treatment based on his state of residence." *Def.'s Mot.* at 7.  Mr. Nicholas does not appear to have responded to this argument in his opposition and for that reason alone his claim is procedurally defaulted.

Moreover, this claim clearly fails on the merits.  The Privileges and Immunities Clause of Article IV of the Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST., ART. IV, § 2.  It requires that "a State must accord residents and nonresidents equal treatment." *Supreme Ct. of New Hampshire v. Piper*, 470 U.S. 274, 279 (1985).  Yet Mr. Nicholas has made no allegation that Maine treats residents and nonresidents differently.

Mr. Nicolas' claim appears to be based on a misunderstanding recently explained by the First Circuit in *Gattineri v. Town of Lynnfield*, 58 F.4th 512 (1st Cir. 2023).  In that case, the plaintiffs argued that their "right to earn a living" was

protected by the Privileges and Immunities Clause and the First Circuit clarified that:

> Appellants attempt to argue that our precedents have recognized that the Privileges and Immunities Clause protects a fundamental right to earn a living. *See Piper v. Supreme Ct. of New Hampshire*, 723 F.2d 110, 118 (1st Cir. 1983).  We first note that there are two versions of the Clause, the first in Article IV § 2 (Privileges and Immunities Clause) and the second in the Fourteenth Amendment (Privileges or Immunities Clause), with distinct applications.  *See Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 382 (1978) (Article IV § 2 "prevents a State from discriminating against citizens of other States in favor of its own."); *Saenz v. Roe*, 526 U.S. 489, 503 (1999) (quoting *Slaughter-House Cases*, 83 U.S. 36, 16 Wall. 36, 80 (1872), and explaining that the Fourteenth Amendment's Privileges or Immunities Clause provides a citizen of one State "with the same rights as other citizens of that State").  Appellants appear to have pled and argued the latter, but they rely upon *Piper*, which addressed Article IV § 2 and, if anything, would protect the right to pursue work in a state where that individual is a nonresident. *See Piper*, 470 U.S. at 280-81, 281 n.10.  Here, even if Appellants claimed the Article IV § 2 version, all parties are Massachusetts residents, so they get nowhere.  As to the Fourteenth Amendment version of the Clause, Appellants have pointed to no authority, nor have we found any, holding that it provides for a fundamental right to earn a living. *Cf. Head v. New Mexico Bd. of Examiners in Optometry*, 374 U.S. 424, 432 n.12 (1963) ("[T]he Privileges [or] Immunities Clause of the Fourteenth Amendment does not create a naked right to conduct a business free of otherwise valid state regulation.") (citing *Madden v. Kentucky*, 309 U.S. 83, 92-93 (1940)).

*Id.* at 515-16.  The Court need not opine on a hypothetical Fourteenth Amendment Privileges or Immunities claim Mr. Nicholas has not pleaded, but the Privileges and Immunities claim he has pleaded fails to state a claim upon which relief can be granted and must be dismissed.

### B.   JB Nicholas' As-Applied Claims

Mr. Nicholas' Complaint does not reference any as-applied claims and it is unclear that he could have pleaded any at the time—given that he filed his Complaint

before the Commissioner first denied his application.  However, since he filed the Complaint, the Commissioner has twice denied his license application—initially and then on administrative appeal after a hearing—and Mr. Nicholas references in his opposition his "as-applied challenge to Maine's guide licensing scheme", which he believes ripened on April 10, 2023, when the Commissioner denied his appeal.  *Pl.'s Opp'n* at 10.  The Court thus considers whether it would be appropriate to rule on his potential as-applied challenges, even if they are not currently pleaded in the operative complaint.

The Court concludes that *Burford* abstention is warranted for the reasons outlined in *Kilroy v. Mayhew*, 841 F. Supp. 2d 414 (D. Me. 2012) and dismisses the complaint without prejudice.   The Supreme Court has outlined the *Burford* abstention doctrine:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Chico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20, 29 (1st Cir. 2011) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)).  There is a "strong presumption in favor of the exercise of jurisdiction," and the First Circuit has held that "*Burford* abstention must only apply in unusual circumstances, when federal review risks having the district court become the regulatory decision-making center."  *Id.* at 30 (citation and internal quotations omitted).  It has also held that

"abstention in the Burford line of cases rested upon ... the threat ... that the federal court might, in the context of the state regulatory scheme, create a parallel, additional, federal, 'regulatory review' mechanism, the existence of which would significantly increase the difficulty of administering the state regulatory scheme." *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 75 (1st Cir. 2021) (quoting *Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n*, 853 F.2d 1007, 1013 (1st Cir. 1988)).

In *Kilroy*, the plaintiff received disability benefits from the Social Security Administration (SSA) and food assistance benefits from the federal Supplemental Nutrition Assistance Program (SNAP), which are administered in Maine by the Maine Department of Health and Human Services (DHHS).  841 F. Supp. 2d at 417. DHHS determined that it would include Ms. Kilroy's SSA benefits as income for the purpose of calculating her SNAP benefits, lowering the amount she received.  *Id.*  Ms. Kilroy disagreed with the determination and requested a hearing to appeal the decision.  *Id.*  A hearing was held and DHHS then issued a decision affirming its earlier decision—and then an amended decision affirming the previous decisions.  *Id.* at 417-18.  Within 30 days of the amended decision, Ms. Kilroy filed an action in federal district court challenging the determination and seeking injunctive relief.  *Id.* at 418.

In assessing whether *Burford* abstention was appropriate, the district court considered three factors: the availability of state-court review; potential interference with state policymaking; and the likelihood of conflict with state proceedings.  *Id.* at

419-24.  Regarding the availability of state court review, the judge in *Kilroy* outlined Maine's same provisions for judicial review of administrative action at issue in this case, concluding that "state court review is sufficiently timely and adequate to support *Burford* abstention" and that "Plaintiff's effort to circumvent this timely and adequate state court procedure triggers a fundamental concern of *Burford* abstention—specifically, having the district court become the 'regulatory decision-making center' and creating a dual review structure for adjudicating Maine regulatory actions."  *Id.* at 421 (quoting *Chico*, 633 F.3d at 30).

The judge in *Kilroy* found further that the plaintiff's suit interfered with state law and policymaking, and also that "[f]ederal court review of this case would conflict with the state proceeding, as Plaintiff seeks review of a state administrative decision in federal court rather than state court."  *Id.* at 421-43.  He concluded that "because conflict with state administrative processes cannot be avoided in this case, *Burford* abstention is warranted."  *Id.* at 424.

The same reasoning applies for Mr. Nicholas' as-applied challenge.  As in *Kilroy*, Maine's licensing regime guarantees Mr. Nicholas "state court review [that] is sufficiently timely and adequate to support *Burford* abstention."  *Id.* at 421.  Likewise, his "effort to circumvent this timely and adequate state court procedure triggers a fundamental concern of *Burford* abstention—specifically, having the district court become the 'regulatory decision-making center' and creating a dual review structure for adjudicating Maine regulatory actions."  *Id.* at 421 (quoting *Chico*, 633 F.3d at 30).  This concern is even greater here than in *Kilroy*.

In *Kilroy*, the plaintiff appears to have filed her federal action after the final administrative decision, in lieu of appealing to the state Superior Court. *Id.* at 418. By the time the district court abstained on *Burford* grounds, her 30-day window to seek review in state court had long passed. *Compare id.* (filed on January 13, 2012) *with id., Compl.* (filed September 9, 2011). Thus, while Ms. Kilroy may have attempted to circumvent state review by jumping to federal court, at no point were state and federal review proceeding on parallel tracks.

Here, by contrast, Mr. Nicholas filed his Complaint in federal court on January 9, 2023. While his Complaint been pending and while the parties have been filing briefs in this court, at the administrative level the Commissioner has denied his initial application, Mr. Nicholas requested a hearing, the Commissioner held a hearing, Mr. Nicholas presented evidence, the Commissioner denied his appeal, and now Mr. Nicholas is entitled to appeal that decision in state court. These parallel proceedings appear to the Court exactly the type of "dual review structure for adjudicating a state's specific regulatory actions" that the *Burford* doctrine is designed to prevent. *Chico*, 633 F.3d at 34.

Furthermore, "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 29. As mentioned previously, the public safety issues related to wilderness guiding raise matters of substantial public concern, and—where "Maine has developed comprehensive procedures for appealing the Departments . . . determinations," *Kilroy*, 841 F. Supp. 2d at 422—permitting any

applicant denied a license because of a past conviction to circumvent the state process to jump instead (or in this case, concurrently) to federal court would be disruptive of the state's efforts to establish a coherent policy. Ultimately, *Burford* abstention is appropriate for Mr. Nicholas' as-applied challenges and the Court dismisses his claims. However, unlike in *Kilroy*, Mr. Nicholas may still seek the judicial review of the administrative decision in state court.

## VI.   CONCLUSION

The Court GRANTS Commissioner Judy Camuso's Motion to Dismiss (ECF No. 10). The Court DISMISSES without prejudice all counts of the Complaint to the extent they are pleaded as as-applied challenges and DISMISSES with prejudice all counts to the extent they are pleaded as facial challenges. Because the Court dismisses Mr. Nicholas' suit, it also DISMISSES as moot his Motion for a Preliminary Injunction (ECF No. 4) and Motion to Supplement the Record (ECF No. 17).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 12th day of May, 2023