UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JB NICHOLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23-cv-00015-JAW |
| | ) | |
| JUDY A. CAMUSO, *Commissioner, Maine* | ) | |
| *Department of Inland Fisheries & Wildlife,* | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR RELIEF FROM JUDGMENT**

A plaintiff moves for relief from a court's prior order granting a defendant's motion to dismiss his case, arguing the defendant perpetrated fraud on the court under Federal Rule of Civil Procedure 60(d)(3) by omitting reference to a potentially relevant statute and that application of the alternate statute would have led the court to reach a different result. Concluding the plaintiff failed to present evidence that the defendant knowingly and intentionally defrauded the court, and further that his case is unavailing even if his proposed alternative statute is applied, the court denies plaintiff's motion for relief from judgment.

**I.    PROCEDURAL BACKGROUND**

On January 9, 2023, JB Nicholas,[1] proceeding pro se, filed a complaint against Judy A. Camuso, in her official capacity as Commissioner of the Maine Department

---

[1]    In the complaint, Plaintiff introduces himself by the name JB Nicholas. *Compl.* (ECF No. 1) at 1-2. The Court has used this nomenclature on the ECF docket and in prior orders. *See, e.g., Order on Mot. to Dismiss* at 2 (ECF No. 18). Mr. Nicholas's present motion, however, introduces himself and signs his filing as Jason B. Nicholas. *See Not. of Mot. for Relief from J. Pursuant to F[.]R[.]C[.]P[.]*

of Inland Fisheries and Wildlife (the Commissioner), alleging that the State's guide licensing regime violated his constitutional rights pursuant to the First, Fifth, and Fourteenth Amendments and Article IV's Privileges and Immunities Clause by denying his application for a Maine guide license based on his prior felony conviction. *Compl.* at 1 (ECF No. 1). That same day, he also filed a motion for a preliminary injunction to enjoin the Commissioner from penalizing him for working as an unlicensed guide. *Mot. for a Prelim. Inj.* (ECF No. 4).

The Commissioner moved to dismiss his complaint on April 10, 2023, asserting Mr. Nicholas lacked standing because his claim was unripe for federal resolution based on pending state proceedings in Maine Superior Court and because of her sovereign immunity. *[Def.'s] Mot. to Dismiss* (ECF No. 10). She also responded to the motion for preliminary injunction on April 11, 2023. *Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj.* (ECF No. 11). Mr. Nicholas opposed the Commissioner's motion to dismiss and added further support for his motion for injunctive relief on April 13, 2023, *Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss & in Further Supp. of Pl.'s Mot. for a Prelim. Inj.* (ECF No. 12); *Mem. by JB Nicholas in Support of Mot. for Prelim. Inj.* (ECF No. 13), and filed additional attachments in support of his opposition to dismissal on April 24, 2023. *Supp. Citation Letter* (ECF No. 14); *Additional Attachs.* (ECF No. 15). The Commissioner replied in support of her motion

---

*60([d])(3)* at 1-2 (ECF No. 28). In the interests of consistency within the docket, the Court continues to apply the name in the complaint of JB Nicholas for the purposes of this order.

to dismiss on April 27, 2023. *Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss* (ECF No. 16).

On May 12, 2023, the Court granted the Commissioner's motion and dismissed all Mr. Nicholas's as-applied challenges without prejudice and all facial challenges with prejudice, as well as ordering the dismissal of his motion for preliminary injunction. *Order on Mot. to Dismiss* (ECF No. 18). That same day, Mr. Nicholas timely appealed the Court's judgment to the First Circuit Court of Appeals. *Not. of Appeal* (ECF No. 20). The First Circuit affirmed this Court's decision on February 20, 2024, *J.* (ECF No. 26) (*First Cir. J.*), and returned jurisdiction to this Court on March 29, 2024. *Mandate* (ECF No. 27). The United States Supreme Court denied Mr. Nicholas's petition for a writ of certiorari on October 7, 2024. *Nicholas v. Camuso*, 145 S. Ct. 181 (2024).

On October 12, 2024, Mr. Nicholas moved for relief from judgment pursuant to Federal Rule of Civil Procedure 60(d)(3), asserting the Commissioner repeatedly misrepresented Maine law throughout the pendency of the lawsuit. *Not. of Mot. for Relief from J. Pursuant to F[.]R[.]C[.]P[.] 60([d])(3)* (ECF No. 28) (*Pl.'s Mot.*); *id.*, Attach 1, *Mem. of Law in Support of Mot. for Relief from J. Pursuant to F[.]R[.]C[.]P[.] 60([d])(3)* (*Def.'s Mem.*). The Commissioner responded in opposition on November 4, 2024. *Def.'s Opp'n to Pl.'s Mot. for Relief from J.* (ECF No. 29) (*Def.'s Opp'n*). Mr. Nicholas filed a reply and related attachments in support of his motion on November

15, 2024.[2] *Mem. of Law in Reply on Mot. for Relief from J.* (ECF No. 33) (*Pl.'s Reply*); *Additional Attachs.* (ECF No. 34) (*Pl.'s Reply Attachs.*).

## II.    THE PARTIES' POSITIONS

### A.    JB Nicholas's Motion and Memorandum

#### 1.    The Motion

Mr. Nicholas moves for relief from the Court's judgment dismissing his complaint, alleging "the Court effectively converted Defendant's Motion to Dismiss into a Motion for Summary Judgment--over Plaintiff's explicit objection--and dismissed Plaintiff's Complaint, denying Plaintiff the opportunity to conduct discovery." *Pl.'s Mot.* at 6.  Without an opportunity for discovery, Mr. Nicholas says, "the Court ruled Maine's guide licensing regime survived intermediate First Amendment scrutiny and was constitutional on its face." *Id.* (citing *Order on Mot. to Dismiss* at 9-14).  Plaintiff alleges the Court further considered his complaint as an as-applied challenge to Defendant's decision to deny him a guide license and "issued an unconstitutional advisory opinion" by deciding to abstain from resolving the as-applied challenge based on a pending state proceeding pursuant to *Burford v Sun Oil Co.,* 319 U.S. 315 (1943).  *Id.* at 6-7 (citing *Order on Mot. to Dismiss* at 18-23).

Plaintiff continues that the Commissioner represented to the Court that her consideration of guide license applications is controlled solely by 12 M.R.S. §

---

[2]    Mr. Nicholas originally filed his reply and related attachments on November 14, 2024.  *See Mem. of Law in Reply on Mot. for Relief from J.* (ECF No. 30); *Additional Attachs.* (ECF No. 31).  However, he noted an error in the original filings and asked the Court Clerk to mark these documents as filed in error.  *See Not.* (ECF No. 32).  He subsequently filed revised versions of his reply and attachment on November 15, 2024, which are the pending motion's operative documents.  *See Mem. of Law in Reply on Mot. for Relief from J.* (ECF No. 33) (*Def.'s Reply*); *Additional Attachs.* (ECF No. 34).

10908(1)(D), the Maine state statute entitled "Guide license revocation." *Id.* at 7 (citing *[Def.'s] Mot. to Dismiss* at 9-10; *[Def.'s] Mot. to Dismiss*, Attach. 1, *Aff. of Christopher Cloutier* (*Cloutier Aff.*)).    However, Plaintiff argues, 12 M.R.S. § 10908(1)(D) does not by itself control Maine guide licensing decisions; "[i]n truth, 5 M[.]R[.]S[.] § 5303 also controlled Defendant's decision whether to grant Plaintiff a Maine guide license." *Id.* at 8.  Mr. Nicholas explains that 5 M.R.S. § 5303 "is one part of a larger group of laws Maine appears to have first enacted in 1975 to give former one-time felons a second chance at life," adding that these laws restrict the power of Maine administrative agencies to deny occupational licenses to applicants with felony records.  *Id.*

Detailing the statutory scheme, Mr. Nicholas informs the Court that 5 M.R.S. § 5301(1) provides "the appropriate State licensing agency may take into consideration criminal history record information" subject to the limitations described in 5 M.R.S. §§ 5301(2), 5302, and 5303.  *Id.* at 8-9.  After explaining the types of criminal history which may be considered under 5 M.R.S. § 5301(2), which includes, inter alia, felony convictions, Mr. Nicholas submits that § 5302 "allows Maine administrative agencies to deny applications for occupational licenses by former felons but only if the agency determines the applicant 'has not been sufficiently rehabilitated to warrant the public trust.'" *Id.* at 10 (quoting 5 M.R.S. § 5302).  This statute, Mr. Nicholas says, places the burden on the license applicant to prove sufficient rehabilitation, but requires the relevant agency to explain the reasons for its decision in writing.  *Id.* at 10-11 (citing 5 M.R.S. § 5302).

Continuing to 5 M.R.S. § 5303, Mr. Nicholas emphasizes that this statutory section "*imposes time limits on all Maine administrative agencies restricting their power to consider the criminal records of all occupational license applicants*." *Id.* at 11-12 (Plaintiff's emphasis). Plaintiff argues the 5 M.R.S. § 5303's three-year restriction on considering criminal histories applies to the Commissioner's guide licensing decisions, and that after such period, "ex-offender applicants or licensees with no additional convictions are to be considered in the same manner as applicants or licensees possessing no prior criminal record for the purposes of licensing decisions." *Id.* at 12 (quoting 5 M.R.S. § 5303(1)). He adds that, while 5 M.R.S. § 5303(2) provides a ten-year limit for specified state agencies and licensing boards, the Department of Inland Fisheries and Wildlife is not included in this list. *Id.* at 13 (citing 5 M.R.S. § 5303(2)). Finally, Mr. Nicholas submits that 5 M.R.S. § 5304 requires all lawsuits challenging the denial of an occupational license to be filed in the District Court for the District of Maine. *Id.* at 14 (citing 5 M.R.S. § 5304). Mr. Nicholas avers Maine courts have not interpreted 5 M.R.S. § 5303 but directs the Court to a 1976 guidance opinion from the Maine Attorney General's Office explaining "5 M.R.S.[] § 5303 provides for a 3-year time limit on consideration of prior criminal convictions, if there are no additional convictions." *Id.* at 15 (quoting 1976 Me. AG LEXIS 311, at *3).

Returning to the instant case, Mr. Nicholas insists the protections of 5 M.R.S. § 5301 et seq. apply to all applications to Maine administrative agencies for occupational licenses other than the enumerated exceptions, such that "12

6

M[.]R[.]S[.] § 10908 must be interpreted and applied in conjunction with that regime." *Id.* at 15.  He points out that he was paroled from prison in 2003 and, at the time of his application for guide license in December 2022, "had been free from prison for more than 19 years and free from parole for more than 13 years." *Id.*  Thus, Plaintiff says, "according to 5 M.R.S. § 5303," the Commissioner should not have considered his felony conviction.  *Id.*  He claims Defendant's counsel "continued to lie" and "continued to misrepresent" Maine law by asserting in response to his appeal that 12 M.R.S. § 10908 applied to the Plaintiff despite the three-year time limit of 5 M.R.S. § 5303, an alleged misrepresentation that Mr. Nicholas did not realize until pro bono assistance "uncovered Maine's second chance occupational licensing laws, 5 MRS §§ 5301-04, including § 5303(1)." *Id.*  at 16-17.

Mr. Nicholas asks the Court to grant his motion for relief from judgment based on this alleged "fraud on the court." *Id.* at 17.

### 2.    The Memorandum

In a memorandum of law attached to his motion, Mr. Nicholas reiterates his position that the Defendant's counsel perpetrated "fraud on the court," which he asserts warrants setting aside the Court's judgment dismissing his complaint pursuant to Federal Rule of Civil Procedure 60(d)(3).  *Pl.'s Mem.* at 1 (capitalization altered).  He argues the Defendant "falsely represented to 13 federal judges in three federal courts that Maine law allowed Defendant to deny Plaintiff and anyone else ever convicted of a felony," despite "application of 12 M[.]R[.]S[.] § 10908 to Plaintiff is time-limited to three years following 'final discharge, if any, from the correctional system' by another Maine law, 5 MRS § 5303(1)." *Id.* at 2.  Mr. Nicholas claims the

Court relied on these misrepresentations to uphold the constitutionality of 12 M.R.S. § 10908 on his facial and as-applied challenges to Maine's guide licensing regime and asserts this error makes the Court's decision to dismiss "poisoned fruit of her lawyers' misconduct" and justifies his requested relief. *Id.*

Plaintiff cites federal appellate caselaw interpreting "fraud on the court" broadly as any conduct affecting the integrity of the judicial process, including material misrepresentations by a party's lawyer. *Id.* at 3-4 (citing, e.g., *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989); *In re Goff*, 652 F.3d 806, 809 (7th Cir. 2011)). He asserts that lies by counsel are especially fraudulent because perjury by witnesses is a known risk accounted for through cross-examination and discovery, while representations of counsel do not face similar guardrails. *Id.* at 4-5 (citing *In re Goff*, 652 F.3d at 809). Plaintiff seeks to hold the Defendant, represented by the Office of the Maine Attorney General, to a "higher ethical standard" as counsel for the public, and asserts Defendant's counsel "failed to mention, at any time, 5 M[.]R[.]S[.] § 5301(1) or the material fact that 5 MRS § 5303(1) limits application of 12 MRS § 10908 to 'within 3 years of the applicant's or licensee's final discharge, if any, from the correctional system.'" *Id.* at 5-6 (quoting 5 MRS § 5303(1)).

Plaintiff insists 12 M.R.S. § 10908 should not apply to him based on the timing of his release from prison and the time limit of 5 M.R.S. § 5303, adding that, "[e]ven if Maine's Attorney General believed 5 M[.]R[.]S[.] § 5303 does not limit 12 M[.]R[.]S[.] § 10908, the public office's ethical obligations required it to disclose the existence of 5 M[.]R[.]S[.] § 5303 because it[']s at least arguable it applies to Plaintiff by limiting

8

12 M[.]R[.]S[.] § 10908." *Id.* at 8.  Mr. Nicholas alleges this failure to disclose the existence of 5 M.R.S. § 5303 amounted to "fraud on the court" under First Circuit precedent.  *Id.* at 9 (citing *Aoude*, 892 F.2d at 1118 (finding "fraud on the court" where material misrepresentations by counsel "(1) "interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier" or (2) "unfairly hamper the presentation of the opposing party's claim or defense")).

Defendant's counsel's failure to disclose the existence of 5 M.R.S. § 5303, Mr. Nicholas alleges, compromised the integrity of the Court's decision-making and unfairly constrained Plaintiff's ability to present his case, citing in support portions of the Court's order dismissing the complaint analyzing the requirements of 12 M.R.S. § 10908, which Plaintiff asserts "do not accurately reflect what Maine law actually is."  *Id.* at 9-10.  He claims the Commissioner's alleged misrepresentation prejudiced his ability to effectively present his case and misled the Court to conclude that Maine's guide licensing regime passed intermediate First Amendment scrutiny.  *Id.* at 10-11.  Finally, he claims his ability to present his case was further affected by Defendant's counsel withholding this information because he may have proceeded differently, such as bringing a claim in state court or raising arguments under 5 M.R.S. § 5303, had he known 5 M.R.S. § 5303 limited 12 M.R.S. § 10908 to three years after release.  *Id.* at 11-12.

### B.    Commissioner Camuso's Opposition to the Motion

The Commissioner opposes Mr. Nicholas's requested relief from judgment, arguing the Plaintiff's attempts to raise a new argument and to claim his failure to raise that same argument earlier stemmed from Defendant's "fraud on the court" fail

to meet the standards of Rule 60(d)(3). *Def.'s Opp'n* at 1. Defendant argues the statute cited by Mr. Nicholas is inapposite and that the present motion "amounts to a second intemperate and unjustified ad hominem attack regarding the proceedings below," reminding the Court that the Commissioner denied Mr. Nicholas's application in part "due to his failure to accept responsibility for his actions" and that Plaintiff accused this Court of "treason" in his appeal to the First Circuit. *Id.* at 2 (citing *id.*, Attach. 1, *Br. of Pl.-Appellant* at 38).

The Commissioner continues that Plaintiff's claims that 5 M.R.S. § 5303, a publicly available statute, was purportedly hidden from him does not meet the standard of "fraud on the court." *Id.* at 6. After collecting caselaw on the high bar required for such a finding, the Commissioner contends that her statement of the law governing licensure in Maine was supported by accurate citations to 12 M.R.S. § 10908 and does not meet this threshold, nor does her failure to cite 5 M.R.S. § 5303, a statute Plaintiff now contends should apply to his guide license application. *Id.* at 6-7. Collecting caselaw from other federal circuits, the Commissioner insists "'[f]raud on the court' concerns false evidence created with the knowledge and participation of a litigant which deceives the court," while here the publicly available nature of the statute conclusively demonstrates the inappropriateness of Plaintiff's allegations. *Id.* at 8 (citing, e.g., *United States v. Smiley*, 553 F.3d 1137, 1145 (8th Cir. 2009); *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989)).

The Commissioner next reasserts that 12 M.R.S. § 10908 governs her consideration of applications for guide licenses, contrary to Plaintiff's claims

10

regarding the relevance of 5 M.R.S. § 5303. *Id.* at 9. She points out that 5 M.R.S. § 5303(1) states "[t]here is no time limitation for consideration of an applicant's or licensee's conduct which gave rise to the criminal conviction if that conduct is otherwise a ground for disciplinary action against a licensee." *Id.* (quoting 5 M.R.S. § 5303(1)). In Mr. Nicholas's case, Defendant says, her decision to deny his application for a guide license was explained in her written decision:

> Nicholas was convicted in the Westchester County Court (New York) on June 14, 1991, of Manslaughter Second Degree, for which he received a sentence of 5 to 15 years in prison.

> Nicholas described the incident resulting in the conviction as follows: He was 19 years old and out drinking with friends when they were approached by the victim. Nicholas warned the victim to freeze but he didn't. It looked to Nicholas like the victim went to pull a gun, so Nicholas shot at the victim three times with a sawed-off shotgun that was in the car. The victim ran off and Nicholas and his friends drove away. One-week later Nicholas found out the victim had died. Nicholas left New York and joined the Army Reserves. He returned to New York several months later [and] was arrested.

*Id.* at 10 (quoting *Cloutier Aff.*, Ex. C, *Decision* at 3). The Commissioner opines that the conduct of "homicide followed by fleeing the jurisdiction" amounts to a proper basis for denying his application under 12 M.R.S. § 10908 and that, even if applicable, 5 M.R.S. § 5303(1) expressly provides for no time limit in consideration of conduct giving rise to a criminal conviction. *Id.*

Next, the Commissioner contests the applicability of 5 M.R.S. § 5303 to applications for a Maine guide license by invoking the doctrine of *generalia*

*specialibus non derogantas*[3] to assert specific statutes take precedence over general ones when a conflict arises. *Id.* at 11 (citing *Aurelius Inv., LLC v. Puerto Rico*, 915 F.3d 838, 851 (1st Cir. 2019)). Pointing out that Plaintiff provides no basis for his conclusion that 5 M.R.S. § 5303 applies specifically to guide licensure, the Commissioner avers 12 M.R.S. § 10908, entitled "Guide License Revocation," specifically authorizes the Commissioner of the Maine Department of Inland Fisheries and Wildlife, without imposing any time restriction on considerations, to "revoke, suspend, refuse to issue, or renew a guide license" if "an applicant for a guide license has been convicted of committing a crime in the State or any other jurisdiction that is punishable by imprisonment for a term of one year." *Id.* (quoting 12 M.R.S. § 10908(1)(D)). If a permit is denied and the applicant requests a hearing, 12 M.R.S. § 10908(1)(D)(1) authorizes the Commissioner to "issue a guide license or reinstate a guide license that has been revoked, suspended or denied if the commissioner determines that the applicant has been sufficiently rehabilitated from the conviction to warrant the public trust or the nature of the conviction or the circumstances surrounding it do not warrant disqualification from licensure." *Id.* (quoting 12 M.R.S. § 10908(1)(D)(1)).

The Commissioner directs the Court to *Senty v. Board of Osteopathic Examination & Registration*, 594 A.2d 1068 (Me. 1991), which she describes as "[t]he only reported case addressing 5 M.R.S. § 5303," which held that the Maine

---

[3]      As the First Circuit explained in *Aurelius*, *generalia specialibus non derogantas* means the "specific governs the general." 915 F.3d at 851; *see generally* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 183-88 (2012).

Legislature can, in separate enactments, adopt additional requirements to qualify for licensure. *Id.* at 12 (discussing *Senty*, 594 A.2d at 1069-70). Further, Defendant points out, 5 M.R.S. § 5301 et seq. does not define the term "licensed profession, trade or occupation," such that Plaintiff's unsupported argument that 5 M.R.S. § 5303 applies to guide licensure under 12 M.R.S. § 10908 is conclusory and should not be credited. *Id.* To the contrary, Defendant notes, the Office of Professional and Occupational Regulation expressly includes thirteen enumerated boards, *id.* at 13 (citing 10 M.R.S. § 8001(38)), and Maine law elsewhere addresses over one hundred trades, professions, and occupations. *Id.* (citing 32 M.R.S § 59, et seq.). Nowhere, the Commissioner insists, are Maine guides included in such lists. *Id.* Concluding this line of argument, Defendant maintains the specific legislative directives for consideration of guide licenses under 12 M.R.S. § 10908 should take precedence over the general mandate of 5 M.R.S. § 5303. *Id.*

The Commissioner next submits that application of 5 M.R.S. § 5303 to guide licensure decisions would lead to unreasonable results. *Id.* After collecting federal caselaw on the maxim of statutory interpretation to avoid unreasonable results, Defendant points out that reading 5 M.R.S. § 5303 to apply to Title 12 would thus extend to consideration of criminal history prior to the issuance of any "license or permit" administered by the Maine Department of Inland Fisheries and Wildlife. *Id.* at 13-14. Using 12 M.R.S. § 10752 as an example, the Commissioner explains how subsection (5) restricts trapping, fishing, or hunting licenses based on convictions of enumerated burglary-related crimes, while subsection (6) extends this period to 10

years if the offense occurred in the context of a trapping, fishing, or hunting activity. *Id.* (citing 12 M.R.S. § 10752(5), (6)). Thus, Defendant explains, applying the three-year limit of 5 M.R.S. § 5303 would have the unreasonable effect of simultaneously lengthening the period of one provision while reducing another. *Id.*

Based on the foregoing, Defendant asks the Court to deny Plaintiff's motion for relief from judgment. *Id.* at 16.

### C.    JB Nicholas's Reply in Support of His Motion

Mr. Nicholas's reply reiterates his request for relief from judgment and accuses the Commissioner of continuing to perpetrate "fraud on the court" in her response. *Pl.'s Reply* at 1-2. He begins by refuting Commissioner Camuso's claim that his application was denied "in part, due to his failure to accept responsibility for his actions," asserting that the Commissioner's decision only articulates two reasons: that he did not present evidence he was "sufficiently rehabilitated to warrant the public trust" or that he "received counseling." *Id.* at 2 & 2 n.1 (citing *Decision* at 3). Mr. Nicholas continues that Defendant's statement that he "accused this Court of 'treason'" in his appeal misrepresents the truth, conceding he did use the word "treason" but pointing out the word was part of a quote from *New Orleans Public Service, Inc. v Council of New Orleans*, 491 U.S. 350, 358 (1989). *Id.* at 2-3.

Turning to the merits of his case, Mr. Nicholas argues Defendant's position that "5 M[.]R[.]S[.] § 5303(1) does not, as a matter of law, limit 12 M[.]R[.]S[.] § 10908 . . . . misses--or mischaracterizes--Plaintiff's point entirely . . . . [and] [i]t's also not true." *Id.* at 3. Plaintiff first clarifies his position is "that it is at the very least simply arguable 5 M[.]R[.]S[.] § 5303(1) limits 12 M[.]R[.]S[.] § 10908," such that Defendant

was obligated to disclose the existence of 5 M.R.S. § 5303(1) to the Plaintiff. *Id.* at 3-4 (Plaintiff's emphasis). He argues that while Commissioner Camuso cites federal caselaw in support of the proposition that specific statutes take precedence over general, the interpretation of the Maine laws at issue in this case should be guided by decisions from the Maine Supreme Judicial Court. *Id.* at 4-6 (citing, e.g., *Keach v Wheeling & Lake Erie Ry. Co.*, 888 F.3d 1, 7 (1st Cir. 2018)). After reviewing the Law Court's standard tools of statutory interpretation, *id.* at 6-7, he collects Maine caselaw in which the Law Court endeavored to "if possible[,] give effect to both statutes." *Id.* at 7-8 (quoting *State v. London*, 156 ME 123, 127-28, 162 A.2d 150 (1960)), and collecting cases).

Applying this rule to his case, Mr. Nicholas submits the two statutes could, in the words of the Law Court, be "harmonized," by incorporating the three-year limitation from 5 M.R.S. § 5303(1) into 12 M.R.S. § 10908. *Id.* at 8 (quoting *London*, 156 ME at 127-28). He disagrees with the Defendant's suggestion that the two statutes present an irreconcilable conflict, arguing that the Commissioner "tortured" interpretation ignores 5 M.R.S. § 5303(1)'s textual context and legislative history to conclude, without support, that "there is no time limitation" under 12 M.R.S. § 10908. *Id.* at 8-9. Following the Defendant's statutory interpretation, he contends, would "effectively negate" the rest of 5 M.R.S. § 5303(1) and frustrate its purpose by allowing this exception to consume the rule, and thus for Maine agencies to consider applicants' entire criminal history in every case, an absurd result he argues would not align with the Law Court's goals of statutory interpretation. *Id.* at 10-11.

Turning to the legislative history of 5 M.R.S. § 5301 et seq., Plaintiff argues the Maine Legislature intended to protect the ability of those with criminal records to apply for skilled trades and occupations licensed by the State. *Id.* at 12 (citing *id.*, Attach. 1, *Affirmation in Reply* at 4 (in turn citing *id.*, Attach. 4, *Digest of Findings* at 10, 27)). The Maine State Legislature amended 5 M.R.S. § 5303(1) in 1989 to add the fifth sentence at issue in this case, but Plaintiff asserts the legislative history reflects no intent to eliminate or repeal the provision's three-year limit. *Id.* at 12-13 (citing *Affirmation in Reply* at 4-8; *see also id.*, Attachs. 5-9). As such, Plaintiff says, the Court should not read the fifth sentence to "cut the heart out" of 5 M.R.S. § 5303(1) by permitting licensing agencies to consider criminal history beyond the three-year limit. *Id.* at 13.

Plaintiff insists that the Commissioner's interpretation contravenes the text and legislative intent of 5 M.R.S. § 5303(1), and further conflicts with the Maine Attorney General's 1976 opinion. *Id.* at 13-14 (citing 1976 Me. AG LEXIS 311). Further, Plaintiff says, the *Senty* Court, as cited by the Defendant, "did not actually interpret any part of 5 M[.]R[.]S[.] § 5301-5304," but rather interpreted another statute in light of 5 M.R.S. § 5301-5304, and also disqualified the applicant in that case based on incompetence rather than a criminal record. *Id.* at 14-15. Plaintiff maintains that *Senty* actually supports his position by demonstrating Maine statutes governing licensure must be read together. *Id.* at 15-16.

Mr. Nicholas continues to maintain that 12 M.R.S. § 10908 should not be applied to his application because he was convicted in 1991 but the statute was not

enacted until 2006, arguing the statute is thus being retroactively applied in violation of his "vested rights." *Id.* at 17 (citing *NECEC Transmission LLC v. Bureau of Parks & Lands*, 2022 ME 48, ¶¶ 33-42, 281 A.3d 618). He also reasserts the arguments from his memorandum that the Commissioner's omission of 5 M.R.S. § 5303(1) perpetrated fraud on this Court, the First Circuit, and the Supreme Court, and that public officials should be held to a higher ethical standard. *Id.* at 17-21. He adds that any misrepresentations were especially prejudicial in this case because he is proceeding pro se. *Id.* at 19-20.

Finally, Mr. Nicholas asserts that ruling in favor of the Defendant would "effectively grant[] [her] a license to lie" and points out that her example of the effect of 5 M.R.S. § 5303(1) to Title 12's provisions governing trapping, fishing, or hunting licenses is inapposite, as these are not occupational licenses. *Id.* at 21-22. Plaintiff insists that the Commissioner's position that 5 M.R.S. § 5303(1) does not apply to Title 12 suggests the "agency has been defying Maine's legislature since 1975--the year 5 M.R.S. § 5303(1) was enacted." *Id.* at 22.

In conclusion, Plaintiff asks the Court to grant his motion for relief from judgment and sanction the Commissioner by denying her motion to dismiss or, in the alternative, to certify the question of whether 5 M.R.S. § 5303(1) limits 12 M.R.S. § 10908 for resolution by the Maine Supreme Judicial Court. *Id.* at 22-23.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 60 permits a court, inter alia, to "set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d)(3). To support such relief from judgment, the evidence would have to reveal "an unconscionable scheme" or "the most

egregious conduct designed to corrupt the judicial process." *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 133 (1st Cir. 2005) (quoting *Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 48 n.5 (1st Cir. 1995)); *accord Greater Omaha Packing Co. v. Fairbank Reconstruction Corp.*, No. 2:13-cv-436-GZS, 2014 U.S. Dist. LEXIS 133369, at *26 (D. Me. Sept. 23, 2014). A movant must support a claim of "fraud on the court" by clear and convincing evidence. *Hofland v. Westrum*, No. CV-09-218-B-W, 2009 U.S. Dist. LEXIS 80448, at *5 (D. Me. Aug. 28, 2009) (to be granted, a motion to set aside judgment for "fraud on the court" "must be supported by clear, unequivocal and convincing evidence") (quoting *United States v. Yeje-Cabrera*, 430 F.3d 1, 28 n.22 (1st Cir. 2005)).

"A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude*, 892 F.2d at 1118. Typical examples of "fraud on the court" under this provision include "[b]ribery of a judge or counsel exerting improper influence on the Court," though First Circuit caselaw is clear that perjury alone does not qualify as a basis for invocation of Rule 60(d)(3). *Roger Edwards*, 427 F.3d at 133.

## IV.    DISCUSSION

After reviewing the parties' filings, the Court concludes Mr. Nicholas has failed to demonstrate his case meets the high bar imposed by Rule 60(d)(3) for relief from

judgment and, in the alternative, has failed to establish that Commissioner Camuso's denial of his application violated the requirements of 5 M.R.S. § 5303.

### A.    Federal Rule of Civil Procedure 60(d)(3)

First, and more significant, Mr. Nicholas presents no evidence to support his allegations that Defendant intentionally omitted any reference to 5 M.R.S. § 5303 with the conscious goal of misleading the Court or interfering with the Plaintiff's ability to present his case.  In applying Rule 60(d)(3), the First Circuit has required that "it can be demonstrated, clearly and convincingly, that a party has **sentiently** set in motion some unconscionable scheme **calculated to interfere** with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude*, 892 F.2d at 1118 (emphasis added by this Court); *accord Yeje-Cabrera*, 430 F.3d at 28 n.22 (1st Cir. 2005)) (a motion brought pursuant to Rule 60(d)(3) "must be supported by clear, unequivocal and convincing evidence").  Simply put, that high bar with its even higher burden of proof has not been met here.

Mr. Nicholas repeatedly alleges that Commissioner Camuso "lied to this Court . . . [and] the First Circuit Court of Appeals . . .. [and] even lied to the Supreme Court." *Pl.'s Mem.* at 1, 12-13; *see also Pl.'s Reply* at 18-19 (alleging Defendant "intentionally misrepresented Maine statutory law not just to the pro se plaintiff but to 13 federal judges by omitting a clearly controlling state statute that totally undermined their entire defense precisely because the statute totally undermined it").  However, nowhere in his extensive briefing of the issue does Mr. Nicholas include any evidence

to support his allegation that Defendant's omission of any reference to 5 M.R.S. § 5303(1) was part of an intentional scheme to defraud the courts.

The Commissioner's written decision originally denying Mr. Nicholas's guide application bases its authority solely on 12 M.R.S. § 10908(1)(D). *Decision* at 1-3. Similarly, Mr. Nicholas's complaint challenges the constitutionality of "Maine's guide licensing regime" specifically with reference to 12 M.R.S. § 10908(1)(D). *Compl.* ¶¶ 21-23. This statutory provision remained the one at issue on Defendant's motion to dismiss, Plaintiff's appeal, and his petition for writ of certiorari. *See [Def.'s] Mot. to Dismiss* at 8-12; *First Cir. J.* at 1-3; *Petition for Writ of Cert. to the First Cir.* at 17, *Nicholas v. Camuso*, No. 23-7172 (Apr. 5, 2024). By Plaintiff's own admission, he did not become aware of the potential relevance of 5 M.R.S. § 5301 et seq. until it was "uncovered" by pro bono counsel he secured to assist with the filing of his reply in support of his petition for a writ of certiorari. *Pl.'s Mot.* at 16-17.

At no time, however, does Mr. Nicholas present evidence that Commissioner Camuso or her counsel were aware of the supposed limiting effect of 5 M.R.S. § 5303(1) on 12 M.R.S. § 10908 and made a knowing, conscious decision to suppress it and thus attempt to mislead the Court, as well-established precedent of this Circuit requires to grant Rule 60(d) relief. In fact, as Plaintiff himself submits, his own review of legal databases "failed to uncover a single decision from any Maine court interpreting 5 M.R.S. § 5303," *id.* at 15, and though the Commissioner cites one such case in her opposition, *Senty* does not explicitly contemplate any effect on 12 M.R.S. § 10908. *Senty*, 594 A.2d at 1069-70. Mr. Nicholas presents no additional evidence,

"clear, unequivocal, and convincing" or otherwise, to support his allegations that the Commissioner knowingly and intentionally perpetrated "fraud on the Court." *See Yeje-Cabrera*, 430 F.3d at 28 n.22.

As Defendant points out, the publicly available nature of the statute bolsters the Court's conclusion. *See Def.'s Opp'n* at 8. Mr. Nicholas claims Defendant hampered his ability to present his case and insists he may have proceeded differently had he known earlier about 5 M.R.S. § 5303, *Def.'s Mot.* at 11-12, but he presents no evidence to suggest any actions by Defendant to prevent his earlier invocation of 5 M.R.S. § 5303. As a publicly available statute, § 5303 was equally available to Mr. Nicholas and Commissioner Camuso, and a litigant typically responds to the arguments the opposing party makes, not ones he does not. In the Court's view, the general principle that heightened ethical standards are imposed on state attorneys' general and their professional employees does not mean in the context of this controversy that the Assistant Attorney General should have cited § 5303, a statute Mr. Nicholas himself did not cite, and that the Court has determined does not apply to Mr. Nicholas's case.

Rather, Plaintiff appears to claim that the Commissioner's failure to make him aware of 5 M.R.S. § 5303 amounted to obstructing the presentation of his case. While Mr. Nicholas is correct that government entities have a duty to treat opposing parties fairly and to seek justice, *Pl.'s Mot.* at 5, 7-9 (citing, e.g., *United States v. Doe*, 860 F.2d 488, 494 n.4 (1st Cir. 1988); *Berger v. United States*, 295 U.S. 78, 88 (1935)), the Plaintiff does not direct the Court to any authority obligating a government entity to

generate novel legal defenses on an opposing party's behalf, and the Court is aware of none.

**B.    5 M.R.S. § 5303**

The Court could stop its analysis here and dismiss Mr. Nicholas's motion for relief from judgment on this basis alone.  However, in light of Mr. Nicholas's insistence that 5 M.R.S. § 5303 should govern the review of his application and the First Circuit's directive that lower courts should construe pro se filings liberally, *Gakuba v. Frey*, Nos. 23-1084, 23-1095, 2024 U.S. App. LEXIS 18703, at *1 (1st Cir. Apr. 10, 2024) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), the Court considers whether Mr. Nicholas's 5 M.R.S. § 5303 arguments would change the result.

The Court based its dismissal of Mr. Nicholas's case on two grounds.  First, it dismissed his as-applied challenge on *Burford* grounds because his state appeal was ongoing.  Second, it dismissed his facial challenge upon concluding that "Maine's guide licensing regime is narrowly tailored to serve a significant government interest." *Order on Mot. to Dismiss* at 14-15.  Upon review, application of 5 M.R.S. § 5303 does not affect either of these grounds for dismissal.

First, with regard to his as-applied challenge, the Court dismissed Mr. Nicholas's claims pursuant to *Burford*, 319 U.S. 315, based on Mr. Nicholas's pursuit of administrative review of his application's denial, a process which entitled him to a final appeal in state court, in parallel to bringing his federal claim. *Order on Mot. to Dismiss* at 18-23.  The conclusion to dismiss his as-applied claim pursuant to *Burford* did not depend on the Court's interpretation of 12 M.R.S. § 10908; rather, the Court based its dismissal on the First Circuit's directive to avoid creating a "dual review

structure for adjudicating a state's specific regulatory actions" in accordance with the *Burford* abstention doctrine. *See, e.g.*, *Chico Serv. Station v. Sol Puerto Rico Ltd.*, 633 F.3d 20, 32-34 (1st Cir. 2011)). Permitting a federal appeal of his application's denial at this stage implicates the same concerns by theoretically generating a risk of conflicting decisions at the state and federal levels, the exact reason the Supreme Court created the *Burford* abstention doctrine. Proceeding under 5 M.R.S. § 5303 instead of 12 M.R.S. § 10908 in his federal case does not change the fact that Mr. Nicholas was simultaneously appealing his application's denial within the state system while pursuing his federal lawsuit, and thus does not affect the Court's conclusion to dismiss Mr. Nicholas's as-applied challenge pursuant to *Burford*, 319 U.S. 315.

Mr. Nicholas now asserts that he would have been entitled to appeal the denial of his guide application made under 5 M.R.S. § 5303 by filing a complaint in the District Court for the District of Maine pursuant to 5 M.R.S. § 5304. *Pl.'s Mot.* at 14. However, this argument mistakes the law. 5 M.R.S. § 5304 indeed states "[a]ny person who is aggrieved by the decision of any licensing agency in possible violation of this chapter may file a statement of complaint with the District Court designated in chapter 375."[4]

---

[4]     The subsection of Chapter 375 dealing with judicial review of final agency actions, 5 M.R.S. § 11001, provides that "any person who is aggrieved by final agency action shall be entitled to judicial review thereof *in the Superior Court* in the manner provided by this subchapter." (emphasis added by this Court).

Fundamentally misreading the reference to "the District Court" in § 5304 as the United States District Court, not the Maine State District Court, Mr. Nicholas has filed suit in federal court to challenge the Commissioner's decision. Mr. Nicholas is in the wrong court. The reference to "District Court" in § 5304 is not to the United States District Court, but to the state of Maine District Court.

If § 5304 referred to the federal district court (which it does not), it would violate fundamental concepts of federalism. Under 28 U.S.C. § 1257, only the United States Supreme Court has jurisdiction to hear appeals from final state court judgments. Under 28 U.S.C. § 1331, federal district courts can only exercise original, not appellate, jurisdiction. The Supreme Court merged the two statutes in two cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), commonly known as the Rooker-Feldman doctrine. The Rooker-Feldman doctrine is "jurisdictional in nature" and therefore "if a case is dismissed because the Rooker-Feldman doctrine applies, it means the court has no subject-matter jurisdiction to hear the case." *Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42, 44 (1st Cir. 2003) (citing *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 66 (1st Cir. 2002)). In essence, the Rooker-Feldman doctrine prohibits lower federal courts from sitting in direct review of final state court judgments—unless Congress has specifically authorized such relief—and holds that therefore federal courts should not become a court of appeals for state court decisions. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005); *Miller v. Nichols*, 586 F.3d 53, 58 (1st Cir. 2009) ("Rooker-Feldman bars jurisdiction

whenever parties who lost in state court seek review and rejection of that judgment in federal court"); *Puerto Ricans for P.R. Party v. Dalmau*, 544 F.3d 58, 68 (1st Cir. 2008).  In light of this well-known precept, the Court does not conclude that the Maine Legislature intended to make this Court—as opposed to a state court—the  reviewing court for the denial by the Maine Commissioner of Inland Fisheries and Wildlife of an application for a license to register as a Maine guide.  This is a state matter to be determined by the state court system.

Moreover, it is highly questionable whether the Maine Legislature would have the authority to enact a statute directly affecting the jurisdiction of the United States District Court.  "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)).  Pursuant to § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Court is dubious that the Maine Legislature intended to vest the United States District Court with jurisdiction over appeals from state administrative rulings, as Mr. Nicholas believes, or that a state legislature could by state statute control federal court jurisdiction in this fashion.

As the statute does not entitle Mr. Nicholas to file a federal complaint to challenge the denial of his application, but rather makes review available in the state court system, this argument fails to convince the Court that it erred in its invocation

of the *Burford* abstention doctrine with regard to his as-applied challenge in its order on motion to dismiss. *See Order on Mot. to Dismiss* at 22.

Second, the Court dismissed Mr. Nicholas's facial challenge based on its conclusion that Maine's guide licensing regime under 12 M.R.S. § 10908 is narrowly tailored to serve a significant government interest—to wit, protecting public safety. *Order on Mot. to Dismiss* at 14-15. Mr. Nicholas now argues that the Maine guide application review process is instead governed by 5 M.R.S. §§ 5301-03 and that Commissioner Camuso's consideration of his prior criminal conviction violated the statutory protections contemplated by 5 M.R.S. § 5303. Even accepting as true his claim that this statute applies to his application, however, his argument that the Commissioner denied his application based on the fact of his prior conviction is belied by the factual record.

5 M.R.S. § 5303 indeed imposes a three-year limit on considering a prior criminal conviction in the context of an application to a licensed profession. 5 M.R.S. § 5303(1). However, assuming without deciding that Maine guide licensures fall within the statutory meaning of a licensed profession for the purposes of this order, the statute continues to provide a significant caveat, stating "[t]here is no time limitation for consideration of an applicant's or licensee's conduct which gave rise to the criminal conviction if that conduct is otherwise a ground for disciplinary action against a licensee." *Id.* In her written decision, Commissioner Camuso grounded her denial of Mr. Nicholas's application not only on the fact of his prior conviction, but also, in her own words, "the nature of the conviction and the circumstances

surrounding it." *Decision* at 2.   She explained, in detail, that "[i]f granted a guide license[,] Nicholas would be entrusted with the safety and welfare of the adults and children under his charge, individuals who may have little or no experience engaging in such activities in the woods or on the waters of the State of Maine" and focused her discussion on the facts underlying his conviction:

> His conviction stemmed from his violent conduct that resulted in the death of another person.   The circumstances of the crime and Nicholas'[s] actions following it show a serious lack of judgment.   By his own testimony, Nicholas[] admits he was drinking at the time of the incident, that he shot at a person three times with a sawed-off shotgun, and that he later left the State of New York and joined the Army Reserves despite learning one[ ]week later that person he shot at had died.

*Id.* at 3.   Based on this conduct, not merely his felon status, Commissioner Camuso concluded Mr. Nicholas did not warrant the significant exercise of public trust of issuance of a Maine guide license.   *Id.*

On review, the Court concludes the Commissioner's explanation for her denial of Mr. Nicholas's application comports with the requirements of 5 M.R.S. § 5303, such that, even accepting Mr. Nicholas's argument that 5 M.R.S. § 5303 applies to his Maine guide application, he has not established a basis for relief from judgment.   As stated, 5 M.R.S. § 5303 specifically permits consideration of "conduct which gave rise to the criminal conviction if that conduct is otherwise a ground for disciplinary action against a licensee" without imposing any time limitation on when such conduct can be considered.   Shooting another person, even mistakenly, and fleeing from consequences is unequivocally conduct which, if taken by a licensed Maine guide, would give rise to disciplinary action.   Commissioner Camuso was thus entitled to

consider the circumstances underlying Mr. Nicholas's conviction in her review of his application.

Further, the Court cannot conclude Commissioner Camuso erred in her determination that Mr. Nicholas's conduct of misusing firearms while using alcohol and of subsequently fleeing state jurisdiction despite his knowledge of, and opportunity to reflect on, the fact that the person had died from his wounds raised concerns about whether Mr. Nicholas "can safely lead persons in guiding activities in the State of Maine." *Decision* at 2-3. The Court credits Commissioner Camuso's recognition that Maine guides are often tasked with bringing novice outdoorsmen into remote and potentially dangerous environments, and as such that such licenses are a serious commitment of public trust.

The Commissioner additionally noted that Mr. Nicholas described "having grown up in a violent environment" and that his conviction "stemmed from his violent conduct that resulted in the death of another person." *Id.* at 3. Furthermore, Mr. Nicholas acknowledged that he had been "drinking at the time of the incident, that he shot at a person three times with a sawed-off shotgun, and that he later left the State of New York and joined the Army Reserves despite learning one-week later that person he shot at had died." *Id.* Significantly, the Commissioner emphasized that "[t]here is no evidence in the record that Nicholas has received counseling." *Id.* Thus, Mr. Nicholas simply did not convince the Commissioner that "he has been sufficiently rehabilitated to warrant entrustment with a Maine guide license." *Id.*

The Court concludes Commissioner Camuso acted well within her discretion by deciding Mr. Camuso's prior conduct disqualified him from being granted a Maine guide license, and that her basis for this denial comports with the requirements of 5 M.R.S. § 5303.

Finally, the Court emphasizes that, on February 20, 2024, the First Circuit affirmed this Court's dismissal of Mr. Nicholas's case, approving of this Court's exercise of *Burford* abstention as to the as-applied challenge and its conclusion that Maine's licensing regime is facially constitutional. *First Cir. J.* at 2-3. It is the practice, and indeed the obligation, of this Court to follow the mandates of the First Circuit. *See, e.g.*, *Carson v. Makin*, 668 F. Supp. 3d 26, 33 (D. Me. 2023) ("[T]he mandate rule is a 'branch of the law of the case doctrine that "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case"'") (quoting *United States v. Dávila-Félix*, 763 F.3d 105, 109 (1st Cir. 2014) (in turn quoting *United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004))). The Court thus declines to contravene the First Circuit's mandate in this case by changing its conclusion on the merits of Mr. Nicholas's claims.

For all the reasons discussed, the Court concludes Mr. Nicholas has failed to demonstrate, by any clear and convincing evidence, that the Commissioner or her counsel intentionally perpetrated "fraud on the court," or that applying 5 M.R.S. § 5303 to the Maine guide application process would change Commissioner Camuso's denial of his application or the Court's decision to grant Commissioner Camuso's

motion to dismiss his complaint. The Court thus declines to exercise its authority under Rule 60(d)(3) to set aside its prior judgment dismissing his complaint.

## V.    CONCLUSION

The Court DENIES JB Nicholas's Notice of Motion for Relief from Judgment Pursuant to FRCP 60(d)(3) (ECF No. 28).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of June, 2025